Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3963 | **DATE** | 8/5/2004 |
| **CASE TITLE** | Travelers Casualty and Surety Co. vs. Craig R. Ockerlund, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/9/2004 at 11:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Ruling held on plaintiff's motion for preliminary injunction. Plaintiff's motion for preliminary injunction (4-1) is granted in part and denied in part. Parties are to submit a proposed order consistent with this Opinion. This Opinion is amended on its face to reflect that defendants shall deposit collateral in the amount of $500,000 with plaintiff within twenty days rather than ten days.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 0 6 2004 | |
| | Notified counsel by telephone. | | date docketed | 17 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | CW courtroom deputy's initials | 2004 AUG -5 PM 5:19 U.S. DISTRICT COURT CLERK | date mailed notice mailing deputy initials | |

Date/time received in Central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRAVELERS CASUALTY AND SURETY )
COMPANY )
                                                    )
          Plaintiff, )
                                                    )
v. )     No. 04 C 3963
)     Paul E. Plunkett, Senior Judge
CRAIG R. OCKERLUND and )
SUSAN M. OCKERLUND )
                                                    )
          Defendants. )

**DOCKETED AUG 0 6 2004**

## MEMORANDUM OPINION AND ORDER

Plaintiff seeks a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure requiring defendants to post certain collateral with plaintiff and prohibiting the transfer of all defendants' assets. For the following reasons, the injunction is granted in part and denied in part.

### Background

Plaintiff issued payment and performance bonds on behalf of Ockerlund Construction Company ("Ockerlund"), securing Ockerlund's obligations to perform construction work on various Illinois public projects in accordance with the Illinois Public Construction Bond Act, 30 ILCS 550/1 *et seq.* As a condition for plaintiff to issue the bonds on Ockerlund's behalf, plaintiff required that defendants sign an indemnity agreement, agreeing to indemnify and hold plaintiff harmless from all liability under the bonds it issues ("Indemnity Agreement"). The Indemnity Agreement specifically

provides:

> Indemnitor(s) jointly and severally agree to indemnify Surety from and against any and all Loss and to this end Indemnitor(s) promise:
>
> (a) To promptly reimburse Surety for all Loss and it is agreed that: (1) originals or photocopies of claim drafts or payment records kept in the ordinary course of business, including computer print-outs, verified by affidavit, shall be prima facie evidence of the fact and amount of such Loss; (2) Surety shall be entitled to reimbursement for any and all disbursements made by it in good faith under the belief that it was liable, or that such disbursement was necessary or prudent.
>
> (b) To deposit with Surety on demand the amount of any reserve against Loss which Surety is required or deems it prudent to establish, whether on account of an actual liability or one which is, or may be asserted against it.[1]

(Compl. Ex. A.) The Indemnity Agreement is signed by defendants and Ockerlund and dated June 14, 1995. (Compl. Ex. A.)

As of May 11, 2004, plaintiff has been sued and/or received bond claims totaling $500,000 against the payment and performance bonds it issued on behalf of Ockerlund. (Mot. Prelim. Inj. Ex. A.) Plaintiff notified defendants of the bond claims and requested that defendants post collateral in accordance with the terms of the Indemnity Agreement. As of May 21, 2004, defendants had not deposited any collateral with plaintiff. Plaintiff estimates its exposure under the bonds at $500,000 and has set a reserve in that amount. (Compl. ¶ 12.) Plaintiff brought suit against defendants alleging breach of contract and seeking exoneration, *quia timet*,[2] specific performance of the Indemnity Agreement and a preliminary injunction.

---

[1] This type of provision is called a collateral security provision.

[2] Under the law of suretyship, exoneration and *quia timet* refer to a secondary obligor's (here, plaintiff) right to relief when a primary obligor breaches its duty to perform the underlying obligation. RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 21 cmts. i, j, k (1996). These remedies are equitable remedies. *See United States Fidelity & Guaranty Ins. Co. v. Cler Constr. Servs., Inc.*, No. 03-C1405, 2003 WL 1873926, at *2 (N.D. Ill. Apr. 11, 2003) (citing *Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954)).

Before us now is plaintiff's motion for a preliminary injunction. Plaintiff seeks an order requiring defendants to post collateral in the amount of $500,000, and until that time, enjoining and restraining defendants from selling, transferring, disposing or creating a lien on their assets and property and granting to plaintiff a lien upon all assets and property owned by defendants and in which defendants have an interest. Plaintiff also seeks an order requiring defendants to indemnify and exonerate plaintiff for all liabilities, losses and expenses incurred by plaintiff as a result of plaintiff having issued the bonds.

**Discussion**

As a first matter, we must address defendants' argument that under the Supreme Court decision of *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), we lack to power to enter an order seizing, freezing or restraining the use of defendants' property prior to judgment. We do not agree that the *Grupo* decision impacts our ability to grant the relief plaintiff requests under these circumstances.

In *Grupo*, the Court held that a district court does not have the power to issue a preliminary injunction preventing a defendant from transferring assets pending adjudication of a contract claim for money damages. 527 U.S. at 333. In that case, the *Grupo* plaintiffs purchased unsecured notes issued by Grupo Mexicano de Desarrollo, S.A. ("GMD"), a Mexican holding company. GMD fell into financial trouble and missed an interest payment on the notes. The *Grupo* plaintiffs accelerated the principal amount due on the notes and sued for the amount due in federal district court. In their complaint, the *Grupo* plaintiffs alleged that "GMD is at risk of insolvency, if not insolvent already," that GMD was dissipating its most significant asset and that GMD was preferring its Mexican

creditors. *Id.* at 312. They sought breach of contract damages and requested a preliminary injunction restraining GMD from assigning its assets so that it would be able to pay its debts. The *Grupo* plaintiffs claimed that without the preliminary injunction, GMD's actions would frustrate any judgment they could ultimately obtain. The district court issued a preliminary injunction restraining GMD from "dissipating, disbursing, transferring, conveying, encumbering or otherwise distributing or affecting" its assets. *See* 527 U.S. at 310-314. The Second Circuit affirmed.

The Supreme Court reversed the Second Circuit and held that the district court was without the power to grant such a preliminary injunction. The Court looked to The Judiciary Act of 1789, which gave the federal courts jurisdiction over all suits in equity, and reaffirmed its position that the federal courts have the "authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries." *Id.* at 318 (internal quotations and citation omitted). The Court found that the relief the *Grupo* plaintiffs requested was not the kind traditionally conferred by courts of equity. Finding that the district court did not have the power to issue the preliminary injunction, the Court adhered to the established general rule that "a judgment establishing the debt was necessary before a court of equity would interfere with the debtor's use of his property." 527 U.S. at 321.

Defendants contend that this case falls squarely under *Grupo* because, regardless of how it styles its request for relief, plaintiff ultimately seeks money from them. But the facts of this case differ from those of *Grupo* in significant ways. Plaintiff here does not seek only money damages; it seeks equitable relief and that relief is recognized under the law of suretyship. *See Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954) (court of equity will, at surety's request, seize

funds due principal if surety can show debts are currently due, principal is unable to or refuses to pay them and, if they are not paid, surety will become liable). In addition, plaintiff is not simply an unsecured creditor of defendants seeking to freeze defendants' assets before judgment can be obtained. Plaintiff specifically bargained for a collateral security provision pursuant to which defendants contractually agreed to post collateral with plaintiff in the event plaintiff establishes a reserve against losses and demands such amount from defendants. Courts have granted specific performance in cases where indemnitors have failed to comply with collateral security agreements. *See Safeco Ins. Co. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984); *Safeco Ins. Co. v. Dematos Enters., Inc.*, No. 02-C2899, 2003 WL 21293825, at *4 (E.D. Pa. Apr. 10, 2003). To do otherwise would deny a surety of the security position for which he specifically bargained. *See Safeco Ins. Co.*, 739 F.2d at 433.

Defendants also rely on a district court decision in the Eastern District of Virginia in support of its argument that a preliminary injunction under these circumstances is inappropriate. In *Travelers Cas. & Sur. Co. v. Beck Dvlp. Corp.*, 95 F. Supp. 2d 549 (E.D. Va. 2000), a surety sought an injunction preventing an indemnitor from spending the life insurance proceeds of her recently-deceased husband, also an indemnitor. In denying the motion for a temporary restraining order, the court applied the two-step analysis articulated by the Fourth Circuit in *United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 489 (4th Cir. 1999).[3] First, the court asked whether the plaintiff

---

[3] The *Rahman* case involved a claim brought by the United States against a doctor, his wife and others, asserting that the defendants were engaged in fraudulent billing schemes involving government programs. The United States made equitable claims of unjust enrichment, constructive trust and a type of rescission. The Fourth Circuit held that the district court had authority to issue a preliminary injunction freezing the defendants' assets in the wake of the *Grupo* decision because there was a nexus between the assets sought to be frozen and the ultimate relief requested, and the preliminary injunction was a reasonable measure to preserve the status quo until resolution of the claims. *Rahman*, 198 F.3d at 498. The court also recognized the broader application of equity where the public interest was at stake. *Id.*

had an equitable interest in the insurance proceeds. The court found that the plaintiff did not have such an interest because it could not demonstrate a nexus "between the ultimate relief sought and the specific assets in question." *Beck*, 95 F. Supp. 2d at 554. The indemnity agreement, which contained a collateral security provision pursuant to which the indemnitors agreed to pay "an amount sufficient to discharge any claim," was too broad and the lack of specificity was "fatal to the [p]laintiff's claim of a direct interest in any identifiable asset." *Id.* That essentially ended the court's inquiry. In closing, the court also said: "the [p]laintiff has asked the Court to order the specific performance of contractual duties of indemnity, but such duties involve nothing more than the payment or pledging of money. Accordingly, specific performance is an improper remedy generally . . . ." *Id.*[4]

We decline to take the position of the *Beck* court. In that case, the plaintiff sought proceeds from a life insurance policy, which the court noted was not something the surety had counted on when it entered into the indemnity agreement with the defendant. *See Beck*, 95 F. Supp. 2d at 554-55. Here, however, plaintiff has not identified such an asset. It is not unreasonable to assume that plaintiff examined defendants' entire financial situation before it entered into the Indemnity Agreement and that it relied on the information provided by defendants when making its decision to act as surety on the bonds. (Mot. Prelim. Inj. at 3; Reply Mot. Prelim. Inj. at 8.) We also note that other courts have found it appropriate to grant a preliminary injunction to enforce a collateral

---

[4] The court denied the motion for a temporary restraining order without prejudice to the plaintiff's right to later seek a preliminary injunction.

security provision in an indemnity agreement.[5] *See Travelers Cas. & Sur. Co. v. P. B. Verdico, Inc. et al.*, No. 03-C6985 (N.D. Ill. Nov. 26, 2003) (order granting preliminary injunction); *United States Fidelity & Guaranty Ins. Co. v. Cler Constr. Servs., Inc.*, No. 03-C1405, 2003 WL 1873926 (N.D. Ill. Apr. 11, 2003).

We now move on to the familiar standard governing motions for preliminary injunctions. In order to grant a preliminary injunction, we must first find: (1) some likelihood of success on the merits; (2) no adequate remedy at law; and (3) that the plaintiff will suffer irreparable harm if the injunction is not granted. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If these three conditions are met, we then consider: (1) the harm to defendants if the injunction is granted, weighed against the harm to plaintiff if the injunction is denied; and (2) the public interest, *i.e.* the consequences to non-parties of granting or denying the injunction. *Id.* at 11-12.

As for the first prong, plaintiff need only show that it has a "better than negligible" chance of success on the merits of its claim. *See Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). We find that it has made this showing. Under paragraph 2 of the Indemnity Agreement, defendants have agreed to "deposit with Surety on demand the amount of any reserve against Loss which Surety is required or deems it prudent to establish, whether on account of an actual liability or one which is, or may be asserted against it." (Compl. Ex. A ¶ 2(b).) The conditions precedent to defendants' obligations under this provision are plaintiff's establishment

---

[5] Even if we did apply the two-step analysis of *Rahman* as the *Beck* court did, we believe it would not foreclose the possibility that a preliminary injunction is appropriate under these circumstances. First, there is a nexus between the relief sought and the assets in question. Plaintiff seeks equitable remedies which would result in defendants' payment of the bond claims against plaintiff. There is a strong link between the relief sought and ordering defendants to post collateral that would cover these claims. Second, a preliminary injunction in this case would be a reasonable measure to preserve the status quo. "A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." *Rahman*, 198 F.3d at 495 (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212 (1945)).

of a reserve and plaintiff's demand that defendants fulfill their obligation under the provision by posting sufficient collateral. These two conditions have occurred. Plaintiff has established a reserve of $500,000 and has made the requisite demand on defendants. (Compl. ¶ 12; Reply Mot. Prelim. Inj. Ex. B.)

Defendants do not argue that the Indemnity Agreement is unenforceable or that they have a defense to their duty to perform thereunder. Nor do they assert that they have complied with the terms of the collateral security provision or that plaintiff has somehow waived its right to enforce that provision. Their argument that they are not required to post any collateral because plaintiff has not yet sustained any costs, charges or expenses is unavailing. Under paragraph 2(b), there is no requirement that plaintiff have suffered any loss. (Compl. Ex. A ¶ 2(b) specifically contemplates liabilities that "may be asserted against" plaintiff). Moreover, plaintiff has said that it has already paid out money in connection with bond claims. (Reply Mot. Prelim. Inj. Ex. A.) Defendants' argument that plaintiff has a security interest in only property of Ockerlund, if it has any security interest at all, is equally failing. Paragraph 2(b) of the Indemnity Agreement is directed at all of the indemnitors, including defendants, and contemplates the pledge of collateral upon a future event. That future event has come about. Finally, for the reasons discussed *supra*, defendants' arguments under *Grupo* fail. We find that plaintiff has shown a likelihood of success on the merits. *See Western Cas. & Sur. Co.*, 217 F.2d at 165 (equitable remedies of *quia timet* and exoneration allow court of equity to, at surety's request, seize funds due its principal and apply them to principal's debts if surety can show that debts are currently due, principal refuses to pay them and, if they are not paid, surety will become liable); *Travelers Cas. & Sur. Co.*, No. 03-C6985 (N.D. Ill. Nov. 26, 2003) (order granting preliminary injunction and requiring defendants to post collateral); *United*

*States Fidelity & Guaranty Ins. Co.*, 2003 WL 1873926 (granting motion for preliminary injunction in part and ordering defendants to post collateral); *United Fire & Cas. Co. v. Coggeshall Constr. Co., Inc.*, No. 91-C3159, 1991 WL 169147 (C.D. Ill. June 28, 1991) (granting plaintiff specific performance of collateral security agreement); *Mountbatten Surety Co., Inc. v. Szabo Contracting, Inc.*, No. 2-03-0171, 2004 WL 1380189, at *9 (Ill. App. Ct. June 17, 2004) (court recognizes validity of collateral security provision in indemnity agreement).

Plaintiff can also demonstrate that it has no adequate remedy at law and that it will suffer irreparable harm. Courts have held that a *quia timet* action recognizes that any judgment for money damages without "according [the surety] relief of specific performance pursuant to the ... indemnity agreement is not an adequate remedy and would irreparably harm [the surety] by depriving it of pre-judgment relief to which it is contractually entitled." *United Fire & Cas. Co.*, 1991 WL 169147, at *2. *See also United States Fidelity & Guaranty Ins. Co.*, 2003 WL 1873926, at *2 (adopting same position). Our court of appeals has recognized the right to the kind of relief that plaintiff seeks. *See Western Cas. & Sur. Co. v. Biggs*, 217 F.2d at 165.

In addition, under the law of suretyship, even if a surety's loss is monetary and only temporary, that it must assume a primary obligor's obligation at all is a harm for which there is no adequate remedy at law. *See* RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 21 cmts. i, j, k (1996). According to the Restatement, "a primary obligor has a duty to refrain from conduct that impairs the expectation of the secondary obligor that the principal obligor will honor its duty of performance." *Id.* cmt. j. Given the emphasis in the case law and in the Restatement on the inequity of impairing a surety's expectation and requiring it to perform a primary obligor's duty, we believe

that plaintiff has shown an inadequate remedy at law and that it will suffer irreparable harm.[6]

Having found that plaintiff has satisfied the threshold requirements for the issuance of a preliminary injunction, we now turn to the final two considerations: weighing the relative harms and the public interest. Plaintiff argues that the balance of hardships favors it, saying essentially that defendants will suffer no harm from the issuance of a preliminary injunction because all parties will be placed in the position which they bargained for at the time they executed the Indemnity Agreement – plaintiff "will receive the collateral security to which it is entitled, and [defendants] will assume the financial risk associated with the bonds." (Mot. Prelim. Inj. at 11.) Defendants say that they will suffer more harm if the injunction is granted than plaintiff will suffer if the injunction is denied. They argue that granting the injunction will give plaintiff a lien on their property, something plaintiff did not bargain for when it executed the Indemnity Agreement. They also say that if their assets are frozen or a lien placed on their home, the results would be disastrous as it would impact their ability to meet their financial obligations.

The balance of harms in this case tips in favor of plaintiff. If the injunction is denied, plaintiff will be forced to use its own funds to defend and pay claims despite defendants' promises to the contrary. *United States Fidelity & Guaranty Ins. Co.*, 2003 WL 1873926, at *2. This is a serious harm. *See Western Cas. & Sur. Co.*, 217 F.2d at 165; RESTATEMENT (THIRD) OF SURETYSHIP AND GUARANTY § 21 cmts. i, j, k (1996). If the injunction is granted, defendants will be required to perform as they contractually agreed to do. We have no information from which we could

---

[6] We do not find significant the fact that Ockerlund, the construction company and primary obligor, is not a named defendant in this suit. The Restatement's discussion of a surety's role and expectation is equally applicable here where plaintiff agreed to issue the payment and performance bonds in reliance on the promises made in the Indemnity Agreement. Even viewing this as a purely contractual matter outside the province of suretyship law, we do not believe that plaintiff is foreclosed from seeking a preliminary injunction granting specific performance of a contractual provision.

-10-

determine the impact on defendants of providing the collateral security plaintiff requests. Moreover, any funds that defendants deposit as collateral, if not used to pay claims on the bonds, will be returned to defendants. *See Safeco Ins. Co.*, 739 F.2d at 433 (discussing that surety will pay claims on bonds from indemnitor's funds, otherwise surety must return funds to indemnitor); *United States Fidelity & Guaranty Ins. Co.*, 2003 WL 1873926, at * 2 (noting that "any funds posted by the defendants can be easily returned by plaintiff if they are not needed to defend the claims or pay on the claims").

Looking now to the public interest involved, we find no public policy interest that would be served by discharging defendants' obligation to provide collateral security under the Indemnity Agreement on these facts. On the contrary, denying plaintiff the benefit of the Indemnity Agreement it signed in connection with issuing bonds under that Illinois Public Construction Bond Act may impact the conditions under which a surety will issue bonds and frustrate the government's interest in protecting taxpayer money and those who provide labor on public projects. *See Housing Authority of Franklin County v. Holtzman*, 256 N.E.2d 873, 881 (Ill. App. Ct. 1970) (noting purpose of Act). In addition, Illinois law supports giving effect to the intention of the parties in a contractual relationship. *See Mountbatten Surety Co., Inc.*, 2004 WL 1380189, at *8.

The cases and the Restatement make clear that, for a surety in this situation, it is not simply an issue of a monetary loss; rather, it is an issue of impairing a surety's expectation and requiring it to suffer any loss, even if only temporary, associated with the performance of a primary obligor's duty. The law favors protecting a surety in this case. Under these circumstances, we find that plaintiff has made the requisite showing and we grant in part its motion for preliminary injunction. *See American Hosp. Supply Corp. v. Hospital Prod. Ltd.*, 780 F.2d 589, 594 (7th Cir. 1985) ("premise

of the preliminary injunction is that the remedy available at the end of trial will not make the plaintiff whole"). Defendants shall deposit collateral in the amount of $500,000 with plaintiff within ten days of the date hereof.

We do not find it necessary, however, to enter an order freezing defendants' assets or granting plaintiff a lien on defendants' assets until the collateral has been deposited. Similarly, the deposit of collateral will adequately protect plaintiff's right to indemnification for losses incurred as a result of issuing of the bonds.

## Conclusion

For the foregoing reasons, plaintiff's motion for a preliminary injunction is granted in part and denied in part. The parties will submit a proposed Order consistent with this Opinion.

**ENTER:**

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: AUG - 5 2004